IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MWANDISHI G. MITCHELL,            :        CIVIL NO. 1:CV-11-1169
        Petitioner,                :
                                   :            (Judge Kane)
        v.                         :
                                   :
MICHAEL WENEROWHICZ,               :
        Respondent                 :

## MEMORANDUM

In this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, Mwandishi

G. Mitchell ("Petitioner") challenges his 2004 conviction and sentence in the Court of Common

Pleas of Dauphin County, Pennsylvania on charges of Second Degree Murder, Criminal

Conspiracy, Unlawful Restraint and Possession of a Firearm without a License.  He was

sentenced, following a jury trial, to life imprisonment followed by an aggregate consecutive

sentence of 75 to 300 months in prison.  He is currently confined at the State Correctional

Institution at Graterford, Pennsylvania.  The petition is ripe for consideration and, for the reasons

that follow, will be denied.

## I.    Background

The relevant factual background of this case, as extracted from the May 1, 2006 opinion

of the Pennsylvania Superior Court denying Mitchell's direct appeal, is as follows:

> The charges filed in the present case stem from the homicide of Haydee Freytes,
> a/k/a "Cachi," an apparently drug addicted user who sometimes sold drugs and
> also sometimes prostituted herself for drugs or money to acquire drugs.  The
> homicide occurred in the early morning hours of November 1, 2000, in the Italian
> Lake neighborhood in Harrisburg, Pennsylvania.  Police responded to a call
> placed by Joseph Dudick, Jr., who resided in the neighborhood near the actual
> lake for which the neighborhood is named.  In his call to the police, Dudick
> indicated that he was awakened by sounds he believed were gunshots.  Lieutenant
> Annette Books of the Harrisburg Bureau of Police responded to the call just a few
> minutes later and found Ms. Freytes dead of apparent gunshot wounds.  Dr.

Wayne Ross, a forensic pathologist, performed an autopsy upon Ms. Freytes' body and confirmed that she died of a gunshot would to the head. Ms. Freytes had also suffered a gunshot wound to the hand, and had neck injuries consistent with having been dragged by the neck. Additionally, cocaine and morphine were found in Ms. Freytes' bloodstream.

Despite an intensive investigation, charges were not filed against Appellant and his co-defendant, Glenn Taylor, until April 4, 2003. Appellant and Taylor were tried in a jury trial commencing on December 6, 2004, and ending on December 15, 2004, with a guilty verdict on charges of second degree murder, kidnapping, unlawful restraint, criminal conspiracy to commit kidnapping, criminal conspiracy to commit unlawful restraint and carrying a firearm without a license. Appellant was acquitted of first degree murder. At Appellalnt's request, sentence was imposed immediately after the verdict was read. Appellant promptly filed a post-sentence motion, which was denied on April 21, 2005. The present, timely appeal followed.

At trial, the Commonwealth proceeded under a theory that the victim was killed to "settle a score" between her and the two co-defendants after the victim had cheated the two out of drug money. According to testimony introduced at trial, Taylor supplied drugs to Appellant, who had individuals under him selling drugs on the street. Ms. Freytes had accepted drugs from Appellant to sell but, ostensibly, used the drugs herself without paying for them. Reportedly, she then boasted about "ripping off" Appellant to other individuals in that circle of life. The Commonwealth's key witness at trial was Rose Shroy who, like the victim, was also a drug user and prostitute. According to Shroy, at approximately 1:00 a.m. on November 1, 2000, she was standing on the corner of Third and Reilly Streets in Harrisburg when a station wagon pulled up to the corner. Appellant was driving the vehicle and Taylor was situated in the passenger seat. Taylor's girlfriend and son were sitting in the back seat. Taylor then displayed some cocaine and money and asked Shroy if she "wanted to party." Shroy accepted the invitation and climbed into the back seat of the station wagon after which either Taylor or Appellant said they wanted another girl and asked her where they could find her friend "Cachi." Shroy indicated that Ms. Freytes was hanging out near Third and Seneca Streets. Appellant then drove to the corner of Third and Seneca whereupon Shroy called out to Ms. Freytes and got her to come over and get into the front seat of the car. According to Shroy, Appellant was wearing a black "hoodie" sweatshirt with the hood pulled up to obscure his face so that Ms. Freytes would not recognize him prior to entering the vehicle. When she realized that Appellant was the person driving the vehicle, she said "Oh my God," after which Appellant stated "that's right, bitch" and immediately struck Ms. Freytes in the face with the back of his hand. Appellant then drew a gun and drove off in the direction of Italian Lake.

2

Upon arriving at Italian Lake, Taylor pulled Ms. Freytes out of the car at which time Appellant said that he could take over.  Appellant then dragged Ms. Freytes toward the lake.  Taylor's son then asked Taylor what he should do with Shroy.  Fearing that she was about to be harmed or killed, Shroy kicked the car door open, exited the vehicle and ran away.  As she ran from the vehicle, Shroy heard a gunshot followed, approximately 30 seconds later, by a set of gunshots.

(Doc. 16-8 at 17-20, <u>Commonwealth v. Mitchell</u>, No. 914 MDA 2005 (Pa. Super. May 1, 2006)).[1]

On December 15, 2004, the jury convicted Petitioner of second degree murder and related offenses stemming from the November 1, 2000 murder of Haydee Freytes.  The trial judge imposed a sentence of life in prison.  Post-sentence motions were denied on April 21, 2005.  New counsel was appointed for Petitioner's direct appeal.  On May 1, 2006, the judgment of sentence was affirmed.  (<u>Id</u>.)  On November 8, 2006, the Pennsylvania Supreme Court denied a petition for allowance of appeal.  (Doc. No. 16-9 at 2.)

On May 3, 2007, Petitioner filed a timely PCRA petition and counsel was appointed. The following grounds were raised in the petition:

(1)     Ineffectiveness of trial counsel for failing to attack the credibility of Commonwealth witness Rose Shroy;

(2)     Ineffectiveness of trial counsel for failing to request DNA testing;

(3)     Ineffectiveness of trial counsel for failing to object to an Allen charge delivered to the jury after the jury advised the trial judge on the third day of deliberations that it had not reached a verdict but was making progress;

(4)     Ineffective assistance of direct appeal counsel for failure to raise

---

[1]  Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

3

the above three grounds on direct appeal.

(Doc. No. 16-9, Ex. L.)  On December 31, 2008, the PCRA court denied collateral relief.  (Doc. No. 16-11 at 16-18.)  This decision was affirmed by the Pennsylvania Superior Court on September 14, 2010.  (Doc. No. 16-13, Ex. T.)  On May 31, 2011, a petition for allowance of appeal was denied by the Supreme Court of Pennsylvania.  (Id., Ex. V.)

The instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed in this Court on June 20, 2011 wherein Petitioner raises the following three grounds:

(1)     Ineffective trial counsel for failing to have exculpatory hair fragment found in victim's palm DNA tested to identify perpetrator(s) and for failing to have saliva found at scene and semen samples compared against State's DNA Database;

(2)     Ineffective trial counsel in failing to cross-examine Commonwealth star witness Rose Shroy regarding her preliminary hearing testimony which was direct opposite of testimony she gave at trial; and

(3)     Ineffective trial counsel in failing to object when co-defendant's counsel filed a motion to have a supplemental "Allen Charge" read to jury after 3 days of deliberation.

(Doc. No. 1, Pet. at 5-7.)

## II.     Standard of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.  Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-8 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v.

Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

Before a federal court can review the merits of a state prisoner's habeas petition, it must determine whether the petition has met the requirements of exhaustion.  Relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.  See 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions.  See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).  Respondent concedes that the grounds raised in the petition were exhausted by Petitioner when he raised them in his PCRA petition, and pursued the issues on appeal to the Pennsylvania Superior and Supreme Courts.

Once a court has determined that the exhaustion requirement is met, and therefore review of the issues presented in a habeas petition on the merits is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d).  That section states, in relevant part, that exhausted claims that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") places the burden on a petitioner to make this showing.  Williams v. Taylor, 529 U.S. 362 (2000).

The United States Court of Appeals for the Third Circuit has set forth the following

description of the framework for analysis required under § 2254(d):

> Consistent with Supreme Court precedent, we read § 2254(d) to require three distinct legal inquiries. See, e.g., Harrington v. Richter, ___ U.S. ___, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011). The first is whether the state court decision was "contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). The second is whether the state court decision "involved an unreasonable application of" such law. § 2254(d)(1). And the third is whether the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. §2254(d)(2).

> The test for § 2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380, 125 S.Ct. 2456,162 L.Ed.2d 360 (2005)(quoting Wiggins v. Smith, 539 U.S. 510, 519, 520, 123 S.Ct. 2527, 156 L.2d.2d 471 (2003)). For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)(internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75-76, 123 S.Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75, 123 S.Ct. 1166.

> The test for § 2254(d)(1)'s "contrary to" clause is whether the state court decision "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005)(citing Williams, 529 U.S. at 405, 120 S.Ct. 1495, and Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. See Kane v. Garcia Espitia, 546 U.S. 9, 126 S.Ct. 407, 163 L.Ed.2d 10 (2005).

> The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petition has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in

light of the record.  See Rice v. Collins, 546 U.S. 333, 338-339, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006)("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'")(quoting § 2254(e)(1))(citing Miller-El v. Dretke, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009)("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.").  Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication.  Cullen v. Pinholster,__U.S.___,___, 131 S.Ct. 1388, 1401-03, ___L.Ed.2d___ (2011).

Rountree v. Balicki, 640 F.3d 530, 537-38 (3d Cir. 2011).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if a court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record.  28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9ᵗʰ Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. Porter, 276 F. Supp. 2d at 296; see also Williams, 529 U.S. 362 at 408-09.

Relief can only be granted if the petitioner shows that the state court's decision satisfies one of the three tests as set forth above in Rountree.  With the above legal framework in mind, the Court will now address the claims in the instant habeas petition.

## III.   Discussion

Petitioner raises three grounds of ineffective assistance of counsel in his petition.  An ineffective assistance of counsel claim is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), which constitutes "clearly established Federal law" for

AEDPA purposes.  Williams v. Taylor, 529 U.S. 362, 391 (2000); Outten v. Kearney, 464 F.3d 401, 414 (3d Cir. 2006); Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010).   A habeas petitioner asserting a claim under Strickland must establish two elements.  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  Id. at 689.  Thus, counsel's performance will be deemed deficient only if it "fell below an objective standard of reasonableness."  Id. at 688.  The question ultimately is "whether, in light of all the circumstances, the [challenged] acts or omissions were outside the wide range of professionally competent assistance."  Id. at 690.  Reasonableness of counsel's challenged conduct on the facts of the particular case are viewed as of the time of counsel's conduct.  Id. at 689-90.

     "Second, the [petitioner] must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable."  Id. at 687.  In determining prejudice, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695; see also Harrington v. Richter, ___, U.S. __, ___-___, 131 S. Ct. 770, 791-92, 178 L. Ed. 2d 624 (2011)(the question is "whether it is 'reasonably likely' the result would have been different").  Because failure to establish either prong results in denial of a defendant's claim, a court may begin its analysis with either prong of the test.  United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).  If it is easier

to dispose of an ineffectiveness claim for lack of the requisite prejudice, that course should be followed.  Strickland, 466 U.S. at 697.

This Court must determine whether the Pennsylvania state court applied a rule that contradicts the United States Supreme Court's standard set forth in Strickland for evaluating an ineffective assistance of counsel claim or was confronted with a set of facts materially indistinguishable from a decision of the United States Supreme Court but reached a different result.  In the instant matter, the Pennsylvania Superior Court used the following Pennsylvania standard in analyzing Petitioner's ineffective assistance of counsel claims on appeal from the denial of his PCRA petition:

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
> Commonwealth v. Natividad, 595 Pa. 188, 207, 938 A.2d 310, 321 (2007).

(Doc. 16-13 at 5, Commonwealth v. Mitchell, No. 171 MDA 2009 (Pa. Super. Sept. 14, 2010.)

The above standard is basically identical to the Strickland test.  Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the Strickland test.  Commonwealth v. Johnson, 565 Pa. 51, 771 A.2d 751 757 (Pa. 2001).  While the issue of merit of an underlying claim is not a specific factor under Strickland, the United States Court of Appeals for the Third Circuit has held that requiring a showing that the underlying claim has merit is not in conflict with Strickland.  Rompilla v. Horn, 355 F.3d 233, 248 n. 9 (3d Cir. 2004), rev'd on other grounds, Rompilla v. Beard, 545 U.S. 374 (2005).  Rather, it is considered to be a determinative factor in the "deficient performance" prong

of the Strickland analysis.  See Werts, 228 F.3d at 203-04.  The Third Circuit Court of Appeals

has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not

contrary to Strickland.  Jacobs v. Horn, 395 F.3d 92, 107 n. 9 (3d Cir. 2005); Werts, 228 F.3d at

204.

      In the instant case, the court finds that the Pennsylvania court neither applied a rule of

law that contradicts Strickland, nor reached a contrary result after being confronted with facts

materially indistinguishable from Strickland.  As such, the relevant inquiry becomes whether the

state court's decision involved an unreasonable application of Strickland or an unreasonable

determination of facts in light of the record evidence at the time of the state court's adjudication.

The Court will now address each of Petitioner's ineffectiveness claims.

      **A.**    **Failure to pursue DNA testing**

      In his PCRA petition, Petitioner claims that trial counsel was ineffective for failing to test

hair samples found on the victim through the Commonwealth DNA database in order to identify

the perpetrator(s) of the crime.  On PCRA review, the Dauphin County Court of Common Pleas

found this argument to be frivolous because ". . . trial counsel was able to elicit, through cross

examination, that the DNA from the hairs found on the victim did not match that of the

Petitioner."  (Doc. No. 16-11 at 17, Commonwealth v. Mitchell, No. 2429 CR 2003 (Dauphin Ct.

Com. Pl. Dec. 31, 2008)).  As such, there is no reasonable probability that the outcome of the

trial would have been any different had the DNA samples retrieved positively matched someone

else.  In affirming the PCRA court's holding on appeal, the Superior Court found that testimony

at trial revealed that Petitioner was excluded as the source of two items that were DNA tested

(saliva and semen).  As such, there was no reasonable basis to insist on testing the third item, a

hair found in the victim's hand, in an attempt to identify the "real perpetrator."  The Court found

that this issue failed on appeal not only for lack of merit, but also because counsel's chosen trial

strategy was reasonable.  In citing to and agreeing with the PCRA court's conclusion which was

supported by the record, the Superior Court held that "[E]ven assuming that a match is made of

someone other than the Appellant . . . [it] would not have likely yielded a different probable

outcome, because such a minute piece [of] forensic evidence could not counter-balance the

collective weight of evidence brought against the Appellant during the course of his trial."  (Doc.

No. 16-13 at 6-7.)

        Upon reviewing the record, the state courts applied law consistent with Strickland and

their findings were not contrary to or an unreasonable application of clearly established federal

law, or based upon an unreasonable determination of the facts.  See 28 U.S.C. § 2254(d)(1)-(2).

Based upon the record, the jury was apprised that Petitioner's DNA did not match any of the

items recovered at the crime scene that were sent to the state police for DNA testing. In addition,

the jury was informed that some of the items, such as hair, were not tested.  Clearly, it would not

have been logical for trial counsel to challenge evidence that was in Petitioner's favor.  No DNA

evidence was presented to link Petitioner to the crime scene.  As such, the state court found that

trial counsel acted reasonably by not requesting to have items tested that could have come back

to actually link Petitioner to the crime.  For these reasons, this Court will not disturb the state

court's ruling, and this claim of ineffective assistance of counsel will be denied.


        **B.      Failure to cross-examine Commonwealth witness Rose Shroy**

        Petitioner claims that trial counsel was ineffective when he failed to cross-examine the

Commonwealth's star witness Rose Shroy at trial with respect to earlier contradictory testimony she gave at the preliminary hearing.  Specifically, at the preliminary hearing Shroy testified that the victim was severely beaten.  However, at trial she testified to a "single backhand" to the victim.  The earlier testimony of a severe beating is in direct opposition to the testimony of the Medical Deputy Coroner and the autopsy report which listed no signs of trauma to the victim's facial region, neck, chest, abdomen and back.

In addressing the issue of counsel's ineffectiveness in failing to attack the credibility of Shroy, the PCRA court conducted a comprehensive review of the record and found Petitioner's claim to lack any merit.  The trial transcript revealed thorough cross-examination by both Petitioner's counsel and his co-defendant's counsel addressing credibility issues with respect to Shroy.  (Doc. No. 16-11 at 17.)

On appeal, the Pennsylvania Superior Court affirmed the decision of the PCRA court citing to defense counsel's cross-examination of Shroy challenging her credibility, including her inconsistent accounts of the events that took place on the night of the murder.  (Doc. No. 16-13 at 6.)  The Superior Court found that because counsel for Petitioner's co-defendant had thoroughly challenged Shroy's credibility with respect to the issue of the extent of the victim's beating, that it was unnecessary for Petitioner's counsel to repeat the same credibility attacks.

The Court finds that the state courts reasonably denied this ineffective assistance of counsel claim.  The importance of the right of an accused to cross-examine the witnesses against him is crucial.  See, e.g., Turner v. State of La., 379 U.S. 466, 466-73, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1956).  Based upon our review of the trial transcript, defense counsel thoroughly cross-examined Shroy attacking her credibility in general, and specifically with respect to the

inconsistent statements she made at the preliminary hearing with respect to the severe beating of

the victim.  (Doc. No. 16-3 at 12-69; Doc. No. 16-4 at 1.)  Although it was co-defendant's

counsel who conducted this particular line of questioning during his cross-examination of Shroy,

the jury heard all of this testimony and, as such, it was unnecessary for Petitioner's counsel to

repeat the same credibility attacks during his cross-examination of Shroy.  For these reasons, the

state court's determination that this issue is without merit will not be disturbed.

      **C.**      **Failure to challenge Allen Charge**

Petitioner's final argument is that trial counsel was ineffective in failing to object to the

trial court's Allen[2] charge to the jury after the jury advised the trial judge on the third day of

deliberations that it had not reached a verdict, but was making progress.  Petitioner argues that

the supplemental jury instructions coerced the jury to render guilty verdicts.

This issue was raised in the state courts in Petitioner's PCRA petition.  The PCRA court

found that any objection that would have been made by trial counsel to the supplemental charge

would have been frivolous.  (Doc. No. 16-11 at 17.)  In addressing this issue on appeal, the

Pennsylvania Superior Court reviewed the supplemental instructions and concluded they were

not coercive.  The Superior Court found that:

> The trial court did not simply instruct jurors who might be in the minority to
> reconsider their positions in light of the majority view, as would be the case with
> an Allen charge.  Rather, the trial judge asked all the jurors to reexamine their
> positions.  N.T. Trial, 889.  Further, the trial judge instructed the jurors to
> '[r]emember at all times that no juror is expected to give up an honest belief he or
> she may have as to the weight or effect of the evidence, but after full deliberation
> and considering of the evidence in the case, it is your duty to agree upon a verdict,

---

    [2] See Allen v. United States, 164 U.S. 492 (1896); see also Commonwealth v. Greer, 597 Pa.
373, 391-92, 951 A.2d 346, 357 (2008)(explaining an Allen charge is one "directing jurors in the
minority to reconsider their positions in light of the majority view").

if you can do so." Id. at 890.  We agree with the PCRA court that there was no
basis for an objection to the supplemental charge.

(Doc. No. 16-13 at 8.)

An <u>Allen</u> instruction is a jury instruction that a trial judge may issue to a deadlocked jury

in order to encourage the jury to reach a unanimous verdict.  <u>See</u> <u>Allen v. United States</u>, 164

U.S. 492, 501-02, 17 S. Ct. 154, 41 L. Ed. 528 (1896).  In <u>Allen</u>, the Supreme Court upheld a

charge in which "the court direct[s] the minority jurors to reconsider their views in light of their

disagreement with the majority."  <u>United States v. Eastern Med. Billing, Inc.</u>, 230 F.3d 600, n. 1

(3d Cir. 2000).  In <u>Eastern Medical Billing</u>, the Third Circuit held that the trial court had given

an impermissible <u>Allen</u> charge where it instructed, in part, as follows:

> If the greater number of you are for one side, each dissenting juror ought to
> consider whether his or her view is a reasonable one since it makes no effective
> impression on the minds of so intelligent fellow jurors who bear the same
> responsibility ... Also, the jurors who constitute the greater number should
> consider the reasons of those who take a different position to see whether there
> may be persuasive merit in that position.

<u>Eastern Med. Billing</u>, 230 F.3d at 605, 613.

The trial court's instruction in Petitioner's case is clearly distinguishable from those

previously found impermissible in the Third Circuit.  The trial court, in its supplemental charge,

instructed, in part as follows:

> If a majority or even a lesser number of you are in favor of an acquittal, the rest of
> you should ask yourselves again, and most thoughtfully, whether you should
> accept the weight and sufficiency of evidence which fails to convince your fellow
> jurors beyond a reasonable doubt.
>
> On the other hand, if a substantial majority of your number are in favor of a
> conviction, those of you who disagree should reconsider whether your doubt is a
> reasonable one since it appears to make no effective impression upon the minds of
> the others.

> Not only should jurors in the minority reexamine their position, but jurors in the
> majority should do so also.  This is to see whether they have given careful
> consideration and sufficient weight to the evidence that has favorably impressed
> the persons in disagreement with them.
>
> Remember at all times that no juror is expected to give up an honest belief he or
> she may have as to the weight or effect of the evidence, but after full deliberation
> and considering of the evidence in the case, it is your duty to agree upon a verdict,
> if you can do so.

(Doc. No. 16-6 at 7-8).

Clearly, the trial court in its supplemental instruction to the jury encourages both the minority and majority to reexamine their positions.  Further, it reiterates to the jurors not to give up an honest belief he or she may have as to the weight or effect of evidence.  As explained by the Third Circuit in United States v. Brennan, 326 F.3d 176, 192-93 (3d Cir. 2003), "a charge would not be coercive if it contained language urging the jurors to reexamine their own view but not to 'surrender [their] honest conviction as to the weight or effect of evidence solely because of the opinion of [their] fellow jurors, or for the mere purpose of returning a verdict.'" (Id. at 192-93 citing United States v. Fioravanti, 412 F.2d 407, 420 n. 32 (3d Cir. 1969); see also United States v. Alper, 449 F.2d 1223, 1234 (3d Cir. 1971)(holding that a supplemental jury charge was not unduly coercive because although it suggested jurors reexamine their views, it told them not to surrender their honest convictions); see also Gov't of the Virgin Islands v. Gereau, 502 F.2d 914, 935-36 (3d Cir. 1974)(holding that a statement that the jurors were not required to reach a verdict but should try to do so was not coercive)).

Based on the foregoing, the Court finds that the state courts' denial of Petitioner's claim that counsel was ineffective in failing to object to the Allen charge was not contrary to or involved an unreasonable application of, clearly established Federal law or resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  As such, this ineffective assistance of counsel claim is without merit.

**IV.    Conclusion**

For all of the foregoing reasons, the Court will issue an appropriate order denying the pending petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C.        § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322 (2003).  In the instant matter, jurists of reason would not find the disposition of Petitioner's case debatable.

An appropriate order follows.